IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| TRINITY EAST ENERGY, LLC, et al. | § § § | |
| VS. | § § | CIVIL ACTION NO. 4:11-CV-814-Y (Relates to Motion Referred to |
| ST. PAUL SURPLUS LINES INSURANCE COMPANY | § § § | Magistrate Judge Cureton) |

## ORDER GRANTING PLAINTIFFS' FIRST AMENDED MOTION TO COMPEL DISCOVERY

Pending before the Court is Plaintiffs' First Amended Motion to Compel Discovery from St. Paul Surplus Lines Insurance Company (the "Motion"), filed January 18, 2013.[1] [Doc. # 38.] After considering the Motion and Defendant's response, the Court concludes that Plaintiffs may obtain discovery regarding Defendant's loss reserves and, therefore, the Motion should be granted.

Plaintiffs have sued Defendant St. Paul Surplus Lines Insurance Company ("St. Paul") to recover amounts due on an insurance policy issued by St. Paul in favor of Plaintiffs after Plaintiffs' gas well allegedly became "out of control" and was abandoned due to "the unintended flow of oil, gas, water, and fluid . . . from one subsurface zone to another subsurface zone via the bore of the Well." (Pls.' First Am. Compl. ¶¶ 7, 15.) In addition to claims of breach of contract and violations of the Texas Insurance Code, Plaintiffs have asserted a bad faith claim against St. Paul, asserting that St. Paul did not have a reasonable basis for denying payment of Plaintiffs' insurance claims. (Id. ¶ 32.)

In support of their bad faith claim, Plaintiffs allege that St. Paul handled the insurance claim investigation "in a manner calculated to construct a pre-textual basis for denying the

---

[1] This motion was referred on January 30, 2013, by the district court judge to the undersigned for determination. See 28 U.S.C. § 636(b)(1)(A).

[insurance] claims." (*Id.* ¶ 33.) Specifically, Plaintiffs allege that St. Paul initially admitted that the well had become out of control based upon its consulting engineer's conclusion that the well had, in fact, become out of control as defined by the insurance policy. (*Id.* ¶¶ 13, 33). Later, however, St. Paul "switched course" and refused to pay.[2] (*Id.* ¶¶ 13, 33). Plaintiffs further allege that St. Paul has misrepresented the insurance policy's coverage provisions and has misconstrued the provisions so that Plaintiffs' insurance claims could be denied. (*Id.* ¶¶ 13, 33).

In the course of this suit, Plaintiffs have sought discovery from St. Paul regarding its loss reserves.[3] St. Paul asserts that the loss reserves information is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Accordingly, St. Paul has redacted loss reserves information from its document production. (St. Paul's Resp. 2.) Plaintiffs' Motion asks the Court to compel St. Paul to respond to their discovery requests relating to loss reserves because such information is relevant to St. Paul's state of mind in relation to its claims handling and settlement practices. (Mot. 4.) Plaintiffs also argue that loss reserves information is relevant because adjustments to loss reserves during the claims handling process can be used as evidence of the insurer's beliefs as to coverage while the claim is being investigated and considered. (Mot. 4–5.)

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Evidence is relevant if it has any tendency to make a fact that is of consequence in determining the action more probable or less probable than it would be without

---

[2] St. Paul contends in its response that its expert initially concluded in October 2010 that there was "indirect evidence" that the well was out of control but later changed his opinion "based on additional evidence received before his deposition in August 2012." (St. Paul's Resp. 2.)

[3] Loss reserve is "the insurer's own estimate of the amount which the insurer could be required to pay on a given claim." Lee R. Russ & Thomas F. Segalla, 17A *Couch on Insurance* § 251:29 (3d ed. current through December 2012), *available at* COUCH § 251:29 (Westlaw).

the evidence.  Fed. R. Evid. 401.  Accordingly, the Court must determine whether the loss reserves information is relevant to any party's claim or defense or could lead to the discovery of admissible evidence.

In cases involving alleged bad faith on the part of the insurer in denying coverage, the amount of the loss reserve set by the insurer may be relevant because it "could well belie a later claim that the insurer thought in good faith that there was no possibility of the claim falling within coverage." *Couch*, *supra* note 2.[4]  The only Northern District of Texas court case cited in the parties' briefing that directly addresses the issue of discoverability of loss reserves information is *Swicegood v. Medical Protective Co.*, No. 3:95-CV-335-D, 2004 WL 1698285 (N.D. Tex. July 29, 2004).  In *Swicegood*, the plaintiffs brought a *Stowers* claim against the defendant insurer for its failure to settle a lawsuit brought against plaintiffs by a third party.  *See id.* at *1.  Plaintiffs sought discovery of the insurer's indemnity reserves, and the insurer resisted on the grounds that the information was irrelevant.  *See id.*  The district court disagreed and granted plaintiffs' motion to compel, holding that evidence relating to the insurer's indemnity reserves was relevant because it could tend to show that an ordinarily prudent insurer would have accepted the terms of the third party's settlement offers and, thus, that the insurer violated its *Stowers* duty to the plaintiffs.[5]  *See id.* at *3.  The court explained that, if the insurer had established an indemnity reserve of $100,000, this evidence would tend to make it more probable that that the insurer thought it likely that the covered portion of the judgment would be at least

---

[4] *See also Culbertson v. Shelter Mut. Ins. Co.*, No. Civ. A. 97-1969, 1998 WL 743592, at *1 (E.D. La. Oct. 21, 1998) (stating that loss reserves information "may be relevant to the good or bad faith of defendant in denying the claim" because it "may demonstrate or lead to admissible evidence with respect to the thoroughness with which defendant investigated and considered plaintiff's . . . claim"); *Sunahara v. State Farm Mut. Auto. Ins. Co.*, 280 P.3d 649, 657–58 (Colo. 2012) (stating that in bad faith actions, evidence of reserves "could shed light on whether the insurance company adjusted a claim in good faith, or promptly investigated, assessed, or settled an underlying claim").

[5] Under Texas law, the *Stowers* duty is the duty of an insurer to exercise ordinary care in the settlement of claims to protect its insureds against judgments in excess of policy limits.  *See Excess Underwriters at Lloyd's, London v. Frank's Casing Crew & Rental Tools, Inc.*, 246 S.W.3d 42, 57 n.8 (Tex. 2008).

3

$100,000, so it was not acting as an ordinarily prudent insurer in rejecting the third party's $80,000 settlement offer. *See id.*

St. Paul, however, disputes that evidence of its loss reserves are relevant to prove bad faith. To establish that its loss reserves information is not relevant, St. Paul must show that it has no tendency to make the existence of a fact that is of consequence in determining the action more or less probable than it would be without the evidence. *See* Fed. R. Evid. 401. A bad faith claim requires proof that an insurer denied or delayed the claim when it knew or should have known that its liability was reasonably clear. *See Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 55–56 (Tex. 1997). Therefore, in the context of Plaintiffs' bad faith claim in this case, evidence regarding St. Paul's loss reserves is irrelevant if it lacks any tendency to show that St. Paul knew or should have known that its liability was reasonably clear, yet still denied Plaintiffs' claim.

St. Paul asserts that, to prove bad faith, Plaintiffs must produce evidence casting doubt on the reliability of the expert's report, evidence of bias or interest on the part of the expert to testify unobjectively for the insurer, or evidence that a reasonable insurer would not rely on the facts or opinions given by St. Paul's expert. (Resp. 4–5.) The Court finds that the loss reserves information is relevant to these issues because it could tend to show that St. Paul knew or should have known that its liability was reasonably clear, yet still denied Plaintiffs' claim based on unreasonable reliance upon its expert's report. For example, a high loss reserve amount showing the potential for a significant amount of exposure could tend to show St. Paul's state of mind or motive when it allegedly "switched course" and denied Plaintiffs' claim, as well as the expert's state of mind or motive for his change in opinion. Also, if St. Paul continued to assess its loss reserves in a manner inconsistent with its conclusion that it had no duty to compensate Plaintiffs under the policy, this fact could cast doubt on the reasonableness of St. Paul's beliefs as to coverage.

The Court is unpersuaded by St. Paul's attempt to distinguish *Swicegood* because it involved a third-party liability claim.  (Resp. 8.)  The duty alleged to have been violated in *Swicegood* that gave rise to the relevance of the indemnity reserves information was the insurer's *first-party* duty of care to its insured to protect the insured against judgments in excess of policy limits (i.e., the *Stowers* duty).  2004 WL 1698285, at *1, *3.  Similarly, here, the duty alleged to have been violated that gives rise to the relevance of the loss reserves information is St. Paul's *first-party* duty of care to Plaintiffs of good faith and fair dealing.  *See Arnold v. Nat'l County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987) (holding that a duty of good faith and fair dealing arises from the relationship between an insurer and a first-party insured).  St. Paul has not cited, and the Court has not found, any mandatory authority holding that loss reserves information is irrelevant to first-party claims between an insured and its insurer.  The Court is satisfied that Plaintiffs have shown in this case that evidence of the amount at which St. Paul fixed its loss reserve for Plaintiffs' insurance claim—as well as any adjustments (or lack thereof) made by St. Paul to that amount as the investigation and evidence-gathering progressed—may be relevant to Plaintiffs' allegations of bad faith.

Finally, St. Paul argues that its loss reserve information is not subject to discovery because of the "potential for misuse" of the information—for example, a jury could misinterpret loss reserve information as an admission of coverage.  (Resp. 9.)  This concern is premature.  The Court's determination that the requested information falls within the broad range of pretrial discovery is not a ruling or comment on the issue of whether the evidence obtained pursuant to Plaintiffs' discovery requests will be admissible at trial.  Rather, the issue before the Court is merely whether information regarding St. Paul's loss reserves is a matter that is relevant to a party's claim or defense.  The Court determines that it is.  Therefore, Plaintiffs are entitled to obtain discovery on the matter.  *See* Fed. R. Civ. P. 26(b)(1).

Turning to Plaintiffs' request for information regarding St. Paul's loss ratio, the Court notes that St. Paul represents in its response that there are no documents responsive to Plaintiffs' request. (Resp. 10.) Plaintiffs did not file a reply contesting this representation or otherwise inform the Court that it did not agree with St. Paul's response on the loss ratio issue. Accordingly, the Court determines that Plaintiffs' request for information regarding St. Paul's loss ratio should be denied as moot.

**IT IS THEREFORE ORDERED** that Plaintiffs' First Amended Motion to Compel Discovery [doc. # 38] is **GRANTED IN PART** as to Plaintiffs' request for discovery of information relating to St. Paul's loss reserves. In all other respects, the Motion is **DENIED**.

**SIGNED** March _8_, 2013.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE